UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOHN S.,  :
       Plaintiff,  :
         :
   v.  :   C.A. No. 18-55JJM
         :
NANCY A. BERRYHILL, ACTING  :
COMMISSIONER OF SOCIAL SECURITY,  :
       Defendant.  :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

    Plaintiff John S. has moved for reversal of the decision of the Commissioner of Social Security (the "Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (the "Act"). He contends that the Administrative Law Judge ("ALJ") erred in establishing a residual functional capacity ("RFC")[1] devoid of any limitations arising from his severe migraine headaches. Defendant Nancy A. Berryhill ("Defendant") has filed a motion for an order affirming the Commissioner's decision. The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the entire record, I find that the ALJ's RFC finding is sufficiently supported by substantial evidence and untainted by legal error. Accordingly, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) be DENIED and Commissioner's Motion to Affirm Her Decision (ECF No. 12) be GRANTED.

**I.    Background**

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

### A. Plaintiff's Employment and Medical History

Plaintiff's medical history prior to his alleged onset of disability may be briefly summarized. In 2001, at the age of seventeen, while intoxicated, he was the unrestrained driver in a tragic motor vehicle accident; he sustained a serious head injury, including optic nerve damage. Tr. 253, 283-86. Two and a half years later, on August 26, 2003, a neuropsychological re-evaluation performed by two psychologists includes the conclusions that he had made a "good recovery" from the head injury, that his decision to work in computer science would be a "good fit," and that he was left with only "mild difficulty" in attention, language, and learning of discrete verbal information. Tr. 251-57. A 2010 MRI of the brain was normal. Tr. 269. A 2010 eye examination found no vision issues, despite Plaintiff's complaint of eye pressure with nausea and his reported history of migraines. Tr. 258-59. Throughout this period, Plaintiff was employed, working in sales at Best Buy, as a technician at Pitney Bowes, as a state constable[2] and for a family jewelry company. Tr. 50-53, 187.

After Plaintiff's alleged onset of disability (September 1, 2011) and continuing past his date-last-insured (December 31, 2011), he continued to work, albeit never at a job that amounted to "substantial gainful activity." Tr. 28. For example, in 2015, he told Dr. James Sullivan that he was "working at his friend's marijuana harvesting facility" and complained that repeated use of scissors during that job had injured his elbow. Tr. 263. In addition, he testified that he also did intermittent computer jobs, such as installing a printer, for two to three hours a week. Tr. 53-54. In relation to the latter work, during his six months of physical therapy in 2016, he consistently advised staff that he was self-employed, once describing himself as a "programmer"

---

[2] Somewhat inconsistent with his claim of disability, Plaintiff wrote a letter in support of his claim in May 2016, in which he stated that work as a constable was appropriate for him in that it allowed him to work "at my own pace during favorable hours." Tr. 211. The letter also explains that this job ended not because of his impairments, but rather because, in his words, "I have been terminated at the new regimes leisure." Id.

and once as "working FT/FD (self)." Tr. 453-97. When the ALJ asked about this claim of work as a "programmer," Plaintiff testified that he was not really working and that he said "I program" because PT staff asked him, "what do you do?" Tr. 54-55. As of the ALJ hearing, Plaintiff was living in his own apartment, which he keeps clean, although his mother still does his laundry because she sees him getting sweaty and irritable carrying the basket up and down. Tr. 67.

Over the four-year period from Plaintiff's September 2011 alleged onset until shortly before he applied for disability in September 2015, Plaintiff's only medical treatment of record was an emergency room visit for a cut on his thumb not serious enough to require stitches. Tr. 260. The first post-onset relevant treatment was an initial evaluation with Dr. Sullivan on July 20, 2015; Dr. Sullivan noted Plaintiff's history of head trauma and migraine headaches and referred him to a neurologist, Dr. Keith Brecher. Tr. 264. At the first appointment with Dr. Brecher on August 25, 2015, Plaintiff reported three to four migraines a week with vomiting, a pulsating left eye, and feeling nauseous all the time, although, on examination, everything was normal. Tr. 266-67. Dr. Brecher prescribed medication for headaches and nausea. Tr. 267. In October 2015, Plaintiff followed-up with Dr. Brecher; based on his subjective report that the prescribed medications were not working and he was continuing to have three to four headaches per week, Dr. Brecher adjusted the medications. Tr. 275. In December 2015, Plaintiff returned to Dr. Sullivan and complained of stress due to a family circumstance; on the same day, Plaintiff also told Dr. Brecher that his migraines had gotten worse with stress. Tr. 271, 273. Dr. Brecher again found no abnormalities on examination. Tr. 273. A brain MRI done in December 2015 showed surgical changes and mild, nonspecific white matter change that "could reflect non-specific white matter change or a focus of shear injury." Tr. 277. Dr. Brecher's subsequent treating note makes no reference to this MRI. See n.5, infra.

In connection with the application, the file was reviewed by the SSA expert physicians, Dr. Karen Grande at the initial phase and Dr. Abraham Colb on reconsideration; Dr. Colb's file review was completed in February 2016. The file that they reviewed included the massive record from Plaintiff's 2001 hospitalization, the 2003 neuropsychological re-evaluation, the 2010 and 2015 brain MRIs, and the 2015 treating notes of Drs. Sullivan and Brecher. The SSA experts analyzed Plaintiff's claims of chronic head pain and nausea, both for the DIB claim and for the SSI claim; they concluded that Plaintiff's "[i]mpairment or combination of impairments does not significantly limit physical or mental ability to do basic work activities." Tr. 79, 87, 95, 103.

After the Grande/Colb SSA opinions were submitted, Plaintiff's treatment continued but with a shift of emphasis. On January 20, 2016, Plaintiff visited the emergency department complaining of headache and neck pain; he reported a history of chronic migraines with vomiting but told staff that the neck pain was new. Tr. 447. After the pain was alleviated with medication, he was sent home; his request for a brain scan was refused as not clinically indicated. Tr. 449. When Plaintiff saw Dr. Brecher a week later, the focus was on the pain in his neck; Dr. Brecher speculated that Plaintiff's cervical issues might be causing the headaches. Tr. 434. A February 2016 CT of the cervical spine confirmed disc disease. Tr. 438. After several failed referrals to pain clinics,[3] in June 2016, Plaintiff began an intensive course of physical therapy ("PT"), which continued for more than six months.

---

[3] In response to Plaintiff's complaints of pain, Dr. Brecher repeatedly tried to refer him to a pain management clinic. The first was the Warwick pain clinic, where Plaintiff lasted ten minutes because he found it to be "horrid." Tr. 60. Next, Plaintiff was sent to Dr. Handel's clinic, where he was verbally abusive to staff and left. Tr. 62, 425. Next, Plaintiff was referred to Biltmore pain clinic, but he waited three months to call by which time the clinic was not taking new patients. Tr. 61. Last, Dr. Brecher told Plaintiff about a Rhode Island Hospital pain clinic, which Plaintiff testified he had been persistently calling. Tr. 61-62.

4

This PT was very successful. Tr. 453-97. Within less than a month, Plaintiff was no longer taking sumatriptan for migraines. Tr. 461. Dated January 18, 2017, the PT discharge report records that PT has helped him to improve overall function, he has less frequent headaches and has increased ability to complete activities of daily living and heavy chores. Tr. 499. Dr. Brecher concurred, noting in October 2016 that "[Plaintiff] feels as if PT helped him more than taking medication." Tr. 428.

**B.     The ALJ's Decision**

Focusing first on the DIB claim, the ALJ carefully reviewed the "scant record evidence" between Plaintiff's recovery from the 2001 accident until 2015 and found that, prior to his date-last-insured (December 31, 2011), Plaintiff did not have any severe impairment and therefore was not disabled during the period when he was eligible for disability insurance. Tr. 30-31. As to the SSI claim, at Step Two, the ALJ found that Plaintiff did have severe impairments, specifically, migraine headaches, cervical degenerative disc disease, a history of craniotomy, and left optic nerve damage. Tr. 31. With this finding, the SSI sequential analysis continued.

In assessing the severity and limiting effects of Plaintiff's migraine headaches, the ALJ relied on the SSA non-examining physicians, Drs. Grande and Colb, who opined based on the record developed as of February 2016. During the time covered by their file review, treatment was focused on Plaintiff's complaints of frequent and severe migraines and treatment of migraines by Dr. Brecher, a neurologist. Tr. 36-37. The ALJ afforded the SSA physicians "some weight," because they did not have access to the 2016/2017 treating record, which is focused on neck pain, including how PT for neck pain resulted in improvement of the migraines. Tr. 37. After a detailed analysis of the treating record (including Dr. Brecher's treating notes), the ALJ noted her agreement with the SSA assessment that the migraines caused minimal

5

functional impact, an assessment that she found was confirmed by the post-February 2016 treatment during which the migraines improved to the point where Plaintiff ceased taking prescribed medication. Tr. 32-37. The ALJ determined that, despite his impairments, Plaintiff retained the RFC to perform the full range of light work, resulting in a finding of "not disabled." Tr. 38. She explained that the limitations incorporated into the RFC were based principally on the limiting effects of cervical degenerative disc disease, in combination with the other severe impairments (including the migraines). Tr. 37.

## II.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the

Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)). A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a).[4]

### III. **Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

#### A. **The Five-Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. §

---

[4] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986). For simplicity, the Court cites to one set only. See id.

404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 404.1520(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). The claimant must prove the existence of a disability on or before the last day of insured status for the purposes of disability benefits. Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982); 42 U.S.C. §§ 416(i)(3), 423(a), 423(c). If a claimant becomes disabled after loss of insured status, the claim for disability benefits must be denied despite disability. Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

**IV.** **Analysis**

Plaintiff's argument may be simply stated.[5] He contends that, because the ALJ went beyond the SSA physicians' opinions that his migraines are not a severe impairment, and instead, for the SSI claim, found that migraines were severe after the date-last-insured, she was obliged to assign functional limitations to migraine headaches and to incorporate them into the RFC. Tr. 28, 31. Because she did not, the RFC lacks the support of substantial evidence and the error requires remand. Plaintiff contends that he sustained his burden of presenting proof of these limitations with his own testimony (and his subjective claims to Dr. Brecher) that he experienced debilitating migraine headaches accompanied by significant nausea three to four times a week. He links this symptom to the vocational expert's testimony that work is precluded for an individual who misses work three to four times a week due to migraines. See Tr. 71; see West v. Berryhill, No. 17-1170, 2017 WL 6499834, at *1 (1st Cir. Dec. 11, 2017) ("Appellant had the burden of establishing his RFC, and the ALJ had the burden of showing that substantial gainful activity was open to him.").

There are serious problems with this argument.

First, Plaintiff's contention that the December 2015 brain MRI objectively supports the proposition that the migraine headaches caused functional limitations is unavailing. The argument asks the Court improperly to speculate about the medical significance of these

---

[5] Plaintiff also throws in the conclusory criticism that the ALJ "does not specify how the conclusion of a light [RFC] was reached." ECF No. 10 at 8. If intended as an attack on the balance of the ALJ's analysis, this undeveloped argument is waived. In any event, there is no error. The decision reflects that the ALJ carefully examined the evidence submitted after February 2016 and found that it objectively confirmed the new diagnosis of degenerative disc disease of the cervical spine, which supported greater limitations than those reflected in the SSA physicians' opinions. Tr. 37. In so finding, the ALJ gave Plaintiff the benefit of the doubt, crediting his subjective complaints to a degree, and limiting him to light work. Tr. 64. Such a determination is well within the ALJ's purview. See Pafume v. Astrue, No. CA 11-310A, 2012 WL 2149919, at *10 (D.R.I. June 12, 2012) (no error where consulting psychologists "agreed that Plaintiff had only a mild difficulty in concentration but the ALJ gave Mr. Pafume 'the benefit of the doubt in assessing a moderate limitation in this area'").

9

observations. It ignores that Dr. Brecher, who ordered it, did not so interpret this MRI[6]; it ignores Dr. Handel's summary of the findings of this MRI as "unremarkable" as they relate to Plaintiff's headaches; and it ignores that Dr. Colb, the reconsideration SSA expert physician, reviewed this MRI and found that the objective evidence was insufficient to establish migraines as "severe" for purposes of Step Two. Tr. 93-95, 101-03, 425-26, 432. And no treating source or medical expert opined that these MRI findings amount to objective evidence consistent with Plaintiff's subjective complaints.

Second, the ALJ found that Plaintiff's testimony and subjective statements about the severity and intensity of his migraines were not consistent with the medical evidence and other evidence of record. Plaintiff has not challenged this well-supported "credibility" finding. See Tr. 33. Accordingly, there is no error in the ALJ's failure to credit Plaintiff's extreme testimony about the frequency and impact of his migraines. See Tr. 57, 59, 63, 69.

Third, as the ALJ correctly noted, "no treating physician has opined any greater functional limitations." Tr. 37. Rather, the only opinions of record are those from the SSA non-examining experts, who examined the migraine evidence and found that migraines did not significantly limit the ability to do basic work activities. Tr. 95; see Gomes v. Astrue, CA No. 08-233 S, 2009 WL 4015595, at *6 (D.R.I. Nov. 19, 2009) ("The Court of Appeals for the First Circuit has recognized that the assessment of a non-examining medical expert may, in some circumstances, alone constitute substantial evidence.") (citing Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir.1991)).

---

[6] At the March 2016 appointment, which is the next one after the December 2015 MRI, Dr. Brecher focused on Plaintiff's cervical pain, "which may be triggering his headaches," as well as on the failure of his referral to Warwick Pain Center (because Plaintiff felt he had "a bad experience"). Tr. 432-33. Dr. Brecher made no mention of the MRI.

Fourth, the ALJ also noted that Plaintiff reported improvement in his migraine headaches during PT to the point where he ceased taking medication prescribed for migraines. Tr. 27, 428; see Simumba v. Colvin, Civil Action No. 12-30180-DJC, 2014 WL 1032609, at *13 (D. Mass. Mar. 17, 2014) (in determining that there was "little to prevent [the plaintiff] from working," the ALJ considered evidence that migraine medication improved the plaintiff's functionality). The ALJ's observation echoes the same observation by Dr. Brecher. Tr. 428. There is no error in the ALJ's determination that this evidence affirms the opinions of the SSA non-examining physicians that the migraine headaches did not impose any independent functional limitations on Plaintiff's RFC. See id.

Last, at the nub of Plaintiff's attack on the ALJ's approach is the flawed legal proposition that a severe impairment at Step Two requires RFC limitations linked to that impairment. This legal principle has been soundly rejected in this Circuit. Rather, courts treat it as well settled that "the mere fact that an impairment may be 'severe' for purposes of Step 2 does not require a finding that the impairment significantly restricts [the plaintiff's] ability to perform work, i.e., his RFC." Joseph N. v. Berryhill, C.A. No. 17-375 WES, 2018 WL 2722461, at *7 (D.R.I. June 6, 2018) (citing Viveiros v. Astrue, Civil Action No. 10-11405-JGD, 2012 WL 603578, at *12 (D. Mass. Feb. 23, 2012)); see, e.g., Courtney v. Colvin, Civil No. 2:13-cv-72-DBH, 2014 WL 320234, at *4 (D. Me. Jan. 29, 2014) ("a finding that a particular impairment is severe does not necessarily result in a finding of related limitations on the ability to perform work-related functions"). In reliance on these cases, I find that there is no legally impermissible inconsistency between the ALJ's finding that migraines are severe at Step Two, and her finding that Plaintiff's RFC is limited only by the symptoms of cervical disc disease.

For the foregoing reasons, I find no error in the ALJ's decisional approach to the evidence of migraine headaches. She relied on the SSA expert physicians' interpretations of the objective and subjective evidence of the migraines during the period when they were most intense, as well as the dramatic improvement with PT for the period after the SSA review. That amounts to substantial evidence. The ALJ's decision should be affirmed.

## V.     Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) be DENIED and Commissioner's Motion to Affirm Her Decision (ECF No. 12) be GRANTED.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 21, 2018